UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

AMY HAINS

VERSUS

POINTE COUPEE PARISH
GOVERNMENT, POINTE COUPEE
PARISH COUNCIL, AND MAJOR
THIBAULT

CIVIL ACTION

22-835-SDD-RLB

RULING

This matter is before the Court on the *Motion for Preliminary Injunction* filed by Plaintiff, Amy Hains ("Plaintiff").[1] Defendant, Pointe Coupee Parish Government[2] ("the Parish" or "Defendant") filed an *Opposition* to this motion,[3] to which Plaintiff filed a *Reply*.[4] For the reasons set forth below, the Court finds that Plaintiff's Motion should be denied.

I.  **BACKGROUND**

In December 2013, Plaintiff purchased property on False River Road in New Roads, Louisiana, which is located in Pointe Coupee Parish. Plaintiff's property is adjacent to the body of water known as False River. Plaintiff eventually constructed a boat house over False River, also referred to as the "Entertainment Room." To accomplish this construction, on January 16, 2019, Plaintiff entered into a lease

---

[1] Rec. Doc. 38.
[2] Plaintiff originally named as Defendants the Pointe Coupee Parish Council and Major Thibault; Plaintiff First Amended Complaint names only the Pointe Coupee Parish Government as Defendant in this matter. Rec. Doc. 36.
[3] Rec. Doc. 43.
[4] Rec. Doc. 49.

agreement with the State of Louisiana whereby the state leased to Plaintiff approximately 1,800 square feet of state-owned water bottoms in False River for a five-year term.[5] The Lease provides that it was made and executed by the State and Plaintiff "for the sole purpose of maintaining a deck with two boat slips and an upper floor with an entertainment room" on the Leased Property.[6] On December 21, 2018, the State notified the Parish of Plaintiff's lease application, and the Parish ultimately issued a letter on January 2, 2019, notifying the State that it did not object to Plaintiff's construction.[7]

Plaintiff completed construction of the Entertainment Room at the cost of approximately $330,000.[8] Plaintiff also purchased an insurance policy to cover this construction.[9] During and after completion of the construction, Plaintiff's neighbor expressed his objection to the construction, complaining that it obstructed his view of False River.[10]

In June 2022, a portion of the roof of the Entertainment Room was damaged by a fire, and Plaintiff engaged the same contractor who constructed the property to repair the damage; the project was limited to returning the Entertainment Room to its original state.[11]

Although originally advised by the Parish Inspector that Plaintiff needed only a demo permit to construct the repairs, a week later, the Parish Inspector advised Plaintiff's contractor that he must apply for a "shoreline permit," and he also advised the contractor that the Parish President had instructed him not to issue this shoreline permit.[12] Plaintiff's

---

[5] Rec. Doc. 5-1, p. 1.
[6] *Id.*
[7] Rec. Doc. 36, ¶¶ 18-19.
[8] *Id.* at ¶ 21.
[9] *Id.* at ¶ 22.
[10] *Id.* at ¶ 23.
[11] *Id.* at ¶¶ 24-26.
[12] *Id.* at ¶¶ 29-31.

contractor was also advised by the Parish Inspector that the Parish would take legal action against Plaintiff if the contractor proceeded with the repairs.[13] Plaintiff was personally advised by the Parish President that the Parish had passed an Ordinance prohibiting her from repairing the Entertainment Room.[14]

The Pointe Coupee Parish Ordinance addressing shoreline permits is found in Sec. 27(e) of Chapter 6, Article III, of the Code of Ordinances, Pointe Coupee Parish (the "Code").[15] Plaintiff disputes that the permitting requirement in the Ordinance applies to the public side of the legal shoreline owned by the State where her property is located.[16]

The Parish insists Plaintiff must obtain a shoreline permit and has likewise advised Plaintiff that it will not grant a permit unless Plaintiff modifies her boat house to meet the building restrictions added by the 2019 amendments to Section 6-27(a) that were enacted by the Parish in 2019.[17] Plaintiff claims that the Parish has not enforced this Ordinance on other, similarly situated property owners.[18]

Plaintiff further contends the Parish has prohibited her from enjoying the use of her property as it will not allow her to repair the fire damage; it has deprived her of all economically viable use of the property; it has subjected the Entertainment Room to further damages from environmental elements due to the unrepaired roof; and she has lost the insurance premiums paid to cover damage to the Entertainment Room.[19]

---

[13] *Id.* at ¶ 32.
[14] *Id.* at ¶ 33.
[15] *Id.* at ¶¶ 34-37.
[16] *Id.* at ¶¶ 38-46.
[17] *Id.* at ¶¶ 47-48.
[18] *Id.* at ¶¶ 49-52.
[19] *Id.* at ¶¶ 53-56.

Under 42 U.S.C. § 1983, Plaintiff asserts that her constitutional rights have been violated under the following: the Takings Clause, Procedural and Substantive Due Process, the Equal Protection Clause, and the Contracts Clause.[20]

In mid-2023, the Entertainment Room sustained additional damage when a windstorm ripped off portions of the roof that were intact after the fire damage. Plaintiff sought relief from the Parish and asked permission to repair the windstorm damage to the roof; the Parish responded by advising Plaintiff of an amended ordinance that may soon take effect to resolve the issue in this litigation and by also requesting Plaintiff temporarily repair her roof pending State approval of the aforementioned amendments.[21] Plaintiff determined that the cost of these temporary repairs would be between $10,000 and $15,000, and the temporary structure would ultimately need to be torn down after the State approves the amendments. Plaintiff then sought permission from the Parish to perform permanent repairs and received no response. Thus, to prevent further damage to the boat house and further economic loss, Plaintiff filed the pending *Motion for Preliminary Injunction* on September 25, 2023.

The Parish opposes Plaintiff's motion, focusing primarily on the argument that Plaintiff has failed to demonstrate irreparable harm because money damages would adequately compensate the Plaintiff for her losses. The Court agrees.

## II.   PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.[22] A plaintiff

---

[20] *Id.* at ¶¶ 64-79.
[21] *See* Rec. Docs. 38-4 & 38-5.
[22] *Munaf v. Geren*, 553 U.S. 674, 689, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008).

seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that their substantial injury outweighs the threatened harm to the party whom they seek to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest.[23]  Notably, "'[f] the movant fails to meet its burden regarding any one of the necessary elements, a court need not address the other elements necessary for granting a preliminary injunction.'"[24]

The decision to grant or deny a preliminary injunction is discretionary with the district court.[25] However, because a preliminary injunction is an extraordinary remedy, it "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements."[26]  Consequently, the decision to grant a preliminary injunction "is the exception rather than the rule."[27]

The purpose of a preliminary injunction is limited to preserving the relative positions of the parties until a trial on the merits can be held.[28] "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."[29]  For this reason,

---

[23] *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012); *accord Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).
[24] *TWTB, Inc. v. Rampick*, 152 F.Supp.3d 549, 558 (E.D. La. 2016)(quoting *Roho, Inc. v. Marquis*, 902 F.2d 356, 361 (5th Cir.1990) (declining to address the remaining elements necessary to obtain a preliminary injunction after finding that plaintiff failed to show a substantial likelihood of success on the merits); *see also Barton v. Huerta*, 613 Fed.Appx. 426, 427 (5th Cir.2015) ("[F]ailure to succeed one any one of the elements results in a denial of injunctive relief.")).
[25] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).
[26] *Suehs*, 692 F.3d at 348.
[27] *Miss. Power & Light Co.*, 760 F.2d at 621.
[28] *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).
[29] *Id.*

the findings of fact and conclusions of law made by a court deciding whether to grant a preliminary injunction are not binding at trial on the merits.[30]

## III. IRREPARABLE HARM

Plaintiff claims that, absent an injunction, she will suffer irreparable harm "as the exposure caused by her open roof will cause her boathouse to sustain further damages beyond the damage caused by the fire."[31] Further, Plaintiff contends if she is not permitted to make the repairs, she will be in breach of her Lease with the State.

The Parish contends "[t]he real issue is purely monetary. Plaintiff does not wish to expend the $10,000 or so she has been informed, by her choice of contractor, that it will cost to secure the premises with a temporary solution to satisfy her obligation to mitigate her damages."[32] The Parish also argues that Plaintiff has presented no evidence to support her speculative argument that the State will terminate her Lease.

In reply, Plaintiff counters that: "The issue is not whether the harm to Ms. Hains is monetary in nature, it is whether the harm of which she complains can be remedied by the award of money damages in this litigation."[33] Plaintiff claims she has "no available avenue of recovery for the cost of the temporary repairs in this litigation;" thus, she can satisfy the irreparable harm requirement under applicable jurisprudence. Plaintiff maintains that the Parish is forcing her to violate the terms of her Lease, which also constitutes irreparable harm. Finally, Plaintiff claims that the Parish's conduct has harmed her reputation in the "False River community."[34]

---

[30] *Id.*
[31] Rec. Doc. 38-1, p. 9.
[32] Rec. Doc. 43, p. 3.
[33] Rec. Doc. 49, p. 2.
[34] Rec. Doc. 49, p. 2. Plaintiff's First Amended Complaint alleges no claim for "loss of reputation."

As a matter of law, "[i]rreparable injury is harm that 'cannot be undone through monetary damages,' that is, harm for which money damages are inadequate or for which money damages are 'especially difficult' to compute."[35] "The 'central inquiry in deciding whether there is a substantial threat of irreparable harm to the plaintiff is whether the plaintiff's injury could be compensated by money damages.'"[36] Accordingly, "there can be no irreparable injury where money damages would adequately compensate a plaintiff."[37]

The Court is unpersuaded that Plaintiff's loss in this matter is anything more than monetary. Plaintiff has not articulated why money damages are unavailable in this suit, and her First Amended Complaint undermines this claim as she specifically prays for monetary damages against the Parish.[38] Plaintiff contends "the Parish has already made clear that it does not intend to compensate [her] for the temporary repairs it is demanding she make," and Plaintiff's insurer has advised that such repairs are not covered under her policy.[39] The Parish's "intentions" are irrelevant to the Court's determination of liability in this matter. If the Court determines that the Parish is liable to Plaintiff after applying the law to the facts in this case, the Court will award those damages, which are quantifiable.

As to the argument that she is being forced to violate the terms of her Lease with the State, Plaintiff has offered nothing but the conclusory allegation that her Lease may be terminated. This is purely speculative at this point in the litigation, and speculative harm is insufficient to clear the high bar for obtaining a preliminary injunction. "Injunctions

---

[35] *Johnson Controls, Inc. v. Guidry*, 724 F.Supp.2d 612, 619 (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir.1981); *Allied Marketing Group, Inc. v. CDL Marketing, Inc.*, 878 F.2d 806, 810 fn. 1 (5th Cir.1989)).
[36] *Id.* (quoting *Allied Marketing Group, Inc.*, 878 F.2d at 810 fn. 1).
[37] *Id.* (citing *DFW Metro Line Services v. Southwestern Bell*, 901 F.2d 1267, 1269 (5th Cir.1990) (citations omitted)).
[38] Rec. Doc. 36, pp. 15-16.
[39] Rec. Doc. 49, pp. 3-4.

are forward-looking remedies that may issue 'only if *future* injury is "certainly impending."'"[40] "[S]peculation built upon further speculation does not amount to a 'reasonably certain threat of imminent harm'" and does not warrant injunctive relief.[41] "[B]ecause 'the court must decide whether the harm will in fact occur,' a party seeking injunctive relief must 'substantiate the claim of irreparable injury' and 'must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."[42]

Plaintiff relies heavily upon the Fifth Circuit's decision in *Janvey v. Alguire*[43] to support her contention that the availability of money damages does not necessarily preclude the Court from finding irreparable harm. In *Janvey*, the Fifth Circuit affirmed a district court's grant of preliminary injunctive relief to the receiver of the Stanford Estate. The Securities and Exchange Commission brought suit against an investment company, Stanford and related entities, alleging that it had perpetrated a "massive Ponzi scheme" involving billions of dollars.[44] The district court appointed Janvey as a receiver "to marshal the Stanford estate."[45] At the time the lawsuit was filed, Stanford should have had assets in excess of $7 billion, but it had less than $1 billion.[46] After his appointment, Janvey froze millions of dollars in assets, allegedly with funds dispersed by Stanford to former employees. The district court set a date to thaw the frozen assets and to complete the

---

[40] *Sierra Club v US Army Corps of Engineers*, 482 F.Supp.3d 543, 556-557 (W.D. Tex. 2020)(quoting *Aransas Project v. Shaw*, 775 F.3d 641, 664 (5th Cir. 2014) (emphasis added)).
[41] *Friends of Lydia Ann Channel v. United States Army Corps of Engineers*, 701 F. App'x 352, 357 (5th Cir. 2017) (quoting *Narragansett Indian Tribe v. Guilbert*, 934 F.2d 4, 6 (1st Cir. 1991)).
[42] *Sierra Club v. United States Army Corps of Engineers*, 990 F. Supp. 2d 9, 39 (D.D.C. 2013) (quoting *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985)).
[43] 647 F.3d 585 (5th Cir. 2011).
[44] *Id.* at 589-90.
[45] *Id.*
[46] *Id.* at 590.

review. Janvey filed a series of claims against "investor" relief defendants and "employee" relief defendants. He sought a preliminary injunction to freeze certain funds held by the former Stanford employees, which were the proceeds of the alleged Ponzi scheme, and for which he alleged claims of unjust enrichment and fraudulent transfer.[47] The receiver sought equitable relief to recover the property to hold in constructive trust for the benefit of the creditors.[48]

The *Janvey* court granted the preliminary injunction after it determined that the receiver had provided evidence to demonstrate a Ponzi scheme, that such transfers are presumed fraudulent, and that each individual employee received proceeds. The court further found that the dissipation of assets "that are the subject of this suit" would "impair" the district court's ability to grant an effective remedy."[49]

The facts in *Janvey* bear no relationship to the facts presented by Plaintiff herein. There is no pending criminal or regulatory investigation and no allegations that any party will become insolvent prior to trial. Further, Plaintiff has offered only her speculative belief that she would be unable to collect a judgment from the Parish if she prevails at trial.

Plaintiff also contends the decision by the Northern District of Texas in *TitleMax of Texas, Inc. v. City of Dallas*[50] supports her position. In *TitleMax*, the plaintiffs sued the City of Dallas, challenging a recently amended ordinance affecting their industry. They also sought a preliminary injunction to prohibit the City from enforcing this ordinance against them. While the court did not grant the plaintiffs' preliminary injunction, the court *did* find that the plaintiffs had established irreparable harm. The court noted the general

---

[47] *Id.* at 591.
[48] *Id.* at 600.
[49] *Id.*
[50] No. 3:21-cv-1040-S-BN, 2021 WL 4994448 (W.D. La. Aug. 11, 2021).

rule for determining irreparable harm: "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm."[51] However, the court also noted: "There are a few narrow exceptions to the rule that the possibility of an award of damages precludes a finding of irreparable harm sufficient to authorize a preliminary injunction," including "where the rights are economic, but because of their nature or the circumstances of the case establishment of the dollar value of the loss is especially difficult or speculative."[52]

The plaintiffs in *TitleMax* argued that "their economic losses due to the ordinance as amended 'cannot be recovered in damages since the City will undoubtedly assert sovereign immunity as precluding a monetary judgment,' … an argument that the City does not rebut in its response – carries their burden to show that 'a harm is irreparable [because] there is no adequate remedy at law.'"[53] On this basis, the court concluded that

---

[51] *Id.* at *6 (quoting *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 275, 279 (5th Cir. 2012) (citations and internal quotation marks omitted)).

[52] *Id.* at *7 (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 630 n.12 (5th Cir. 1985); *see also Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages. However, the mere fact that economic damages may be available does not always mean that a remedy at law is 'adequate.' For example, some courts have found that a remedy at law is inadequate if legal redress may be obtained only by pursuing a multiplicity of actions. We have previously stated that where a district court has determined that a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds." (citations and internal quotation marks omitted))).

[53] *Id.* at *8 (citing *Janvey*, 647 F.3d at 600; *see Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472-73 (5th Cir. 1985) ("In short, '[t]he key word ... is irreparable,' and an 'injury is "irreparable" only if it cannot be undone through monetary remedies.' Thus, '[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weigh[ ]s heavily against a claim of irreparable harm.' The absence of an available remedy by which the movant can later recover monetary damages, however, may also be sufficient to show irreparable injury." (footnotes omitted)); *Fed. Trade Comm'n ex rel. Yost v. Educare Centre Servs., Inc.*, EP-19-CV-196-KC, 2020 WL 4334117, at *3 (W.D. Tex. Apr. 3, 2020) (Accordingly, "the Fifth Circuit recognizes monetary injuries as irreparable when they arise in '[t]he absence of an available remedy by which the movant can

the plaintiffs had demonstrated irreparable harm because they had no adequate remedy at law–they would be unable to collect any money judgment from the City of Dallas because of its sovereign immunity.

Like *Janvey*, *TitleMax* is easily distinguished from Plaintiffs' case. The *TitleMax* court found no adequate remedy at law because the City of Dallas could (and likely would) assert the defense of sovereign immunity, which would preclude any money judgment in favor of the plaintiffs. Here, the Parish has no such immunity. The law is clear that "[a] parish government is not an arm of the state and is, therefore, not entitled to sovereign immunity."[54] Thus, *TitleMax* is inapplicable here.

Irreparable harm is also not established simply because Plaintiff has asserted claims under the Federal Constitution. For example, in *Sheffield v. Bush*,[55] the court found that homeowners' allegation that their "constitutional rights have been violated is not enough, taken alone, to establish an irreparable injury."[56]

The Court finds persuasive the reasoning and analysis set forth by the District Court for the Western District of Louisiana in *Chambless Enterprises, LLC v. Redfield*.[57]

---

later recover monetary damages.'" (quoting *Enter. Int'l*, 762 F.2d at 473; citing *Texas v. EPA*, 829 F.3d 405, 433-34 (5th Cir. 2016) ("The tremendous costs of the emissions controls impose a substantial financial injury on the petitioner power companies," and "[n]o mechanism here exists for the power companies to recover the compliance costs they will incur if the Final Rule is invalidated on the merits." (citations and footnote omitted)))); *id.* ("Here, in the event that Movants prevail, any monetary costs they incur in complying with the Preliminary Injunction would not be recoverable on a claim for damages, given that Plaintiffs are a federal agency and the State of Ohio." (citations omitted)); *Teladoc, Inc. v. Tex. Med. Bd.*, 112 F. Supp. 3d 529, 543 (W.D. Tex. 2015) ("The possibility that the TMB will assert immunity from monetary damages as a state agency also weighs in favor of finding Plaintiffs face irreparable harm." (citations omitted))).

[54] *Guilbeau v. St. Landry Parish Police Jury*, 2006 WL 2054457, *2 (W.D. La. July 20, 2006)(citing *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273 (5th Cir.2002); *Burge v. Parish of St. Tammany*, 187 F.3d 452 (5th Cir.1999)).

[55] 604 F.Supp.3d 586 (S.D. Tex. 2022).

[56] *Id.* at 609 (citing *Lambert v. Bd. of Comm'rs of Orleans Levee Dist.*, No. 05-5931, 2006 WL 8456316, at *7 (E.D. La. Mar. 22, 2006) ("A number of courts have expressly declined to find that the irreparable[-]harm requirement for injunctive relief is automatically satisfied by a plaintiff's allegation that his constitutional rights have been violated.")).

[57] 508 F.Supp.3d 101 (W.D. La. 2020).

In *Chambless*, a residential landlord and association of residential landlords brought an action against the Centers for Disease Control and Prevention (CDC), director for the CDC, acting Chief of Staff for the CDC, Secretary of Health and Human Services (HHS), the HHS, and Attorney General of the United States to invalidate the temporary eviction moratorium issued during the COVID-19 pandemic. The residential landlord plaintiffs moved for a preliminary injunction, which was denied. The court held that the inability of residential landlords to regain possession of their property under the temporary eviction moratorium was not irreparable harm. Further, the residential landlords failed to show that being unable to collect unpaid rent from insolvent tenants would constitute irreparable harm.

Specifically, the plaintiffs argued that there was "no basis for assuming an insolvent individual will see a dramatic change in fortunes. And if there is no meaningful prospect of collecting from nonpaying tenants then there is necessarily irreparable harm."[58] The court rejected this argument and held that the plaintiffs could not satisfy their burden "by suggesting that it may be difficult to enforce money judgments against their tenants. Nothing in the Order prevents Plaintiffs from suing their tenants for unpaid rent."[59] The court continued: "And 'as a general rule,' 'a preliminary injunction is an inappropriate remedy where the potential harm to the movant is strictly financial.'[60] Even economic injuries that are 'substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.'"[61]

---

[58] *Id.* at 121.
[59] *Id.* (citing *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F.Supp.3d 148, 172–73 (S.D.N.Y. 2020)).
[60] *Id.* (quoting *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.*, 875 F.2d 1174, 1179 (5th Cir. 1989).
[61] *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974)).

The *Chambless* plaintiffs argued that this doctrine did not apply because it may be difficult to collect money judgments for unpaid rent entered against their tenants, but the court held that "the certainty of monetary relief is not required; even 'the possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, [weighs] heavily against a claim of irreparable harm.'"[62] The court recognized that the plaintiffs were being harmed "because they are being forced by the Order to continue to provide housing for non-paying tenants. In addition to being unable to collect rent, Plaintiffs are having to pay their own mortgages on the property, are incurring maintenance costs, and are enduring damage to their property from wear and tear. They are also being deprived of the rent that new replacement tenants would be paying."[63] Nonetheless, the court denied the motion for preliminary injunction, in part, because the plaintiffs failed to show that "their losses are non-compensable and therefore irreparable."[64]

The Court is aware of the economic harm Plaintiff faces; however, as in *Chambless*, Plaintiff has failed to demonstrate that her losses are non-compensable. Plaintiff has likewise failed to demonstrate that she has no adequate remedy at law. Applying the foregoing jurisprudence to the facts of the case, the Court finds that Plaintiff has failed to demonstrate irreparable; therefore, Plaintiff is not entitled to the extraordinary relief of a preliminary injunction.

---

[62] *Id.* (quoting *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012)).
[63] *Id.* at 122.
[64] *Id.*

## IV. CONCLUSION

Considering the foregoing law and analysis, the Court DENIES Plaintiff's *Motion for Preliminary Injunction*.[65] The *Motion Requesting Hearing on Motion for Preliminary Injunction*[66] is also DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 7th day of November, 2023.

*[signature]*
SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA

---

[65] Rec. Doc. 38.
[66] Rec. Doc. 45.