UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

AMY HAINS                                                             CIVIL ACTION

                                                                                            22-835-SDD-RLB

VERSUS

POINTE COUPEE PARISH
GOVERNMENT, POINT COUPEE
PARISH COUNCIL, AND MAJOR
THIBAULT

## RULING

This matter is before the Court on the pending *Motion for Partial Summary Judgment*[1] filed by Plaintiff, Amy Hains ("Plaintiff" or "Hains"). Local rule 7(f) of the Middle District of Louisiana requires that memoranda in opposition to a motion be filed within twenty-one (21) days after service of the motion. Despite this rule, Defendant, Pointe Coupee Parish Government ("Defendant" or "the Parish") failed to timely oppose this motion, which was electronically filed on March 15, 2024. Under the Federal Rules of Civil Procedure and the Local Rules of Court, Defendant was required to file an opposition no later than April 5, 2024. At no time did Defendant request an extension of time to oppose this motion.

Therefore, the pending motion is deemed to be unopposed. Ordinarily, a moving party's statement of undisputed facts would be deemed admitted as unopposed. However, several of Plaintiff's purported "facts" are not properly supported. The Court will deem admitted the unopposed facts which are supported by the summary judgment

---

[1] Rec. Doc. 52.

record. or sourced such that the Court can deem them admitted. The Court will enter summary judgment in favor of Plaintiff on the Contract Clause claim but deny summary judgment on the Takings Clause claim.

I.  **BACKGROUND**

On or around December 17, 2013, Hains purchased the property located at 9460 False River Road, New Roads, Louisiana 70760 (the "Property").[2] The Property is adjacent to a body of water in the Parish known as False River, which borders the south side of the Property.[3] The property line between Hains and the State of Louisiana is as outlined by the "Final Map" that is filed with the Pointe Coupee Parish Clerk of Court.[4] Accordingly, the waters and bed of False River beyond the line delineated by the Final Map belong to the State of Louisiana.[5] Based on other boathouses on the lake, Hains was inspired to build her own boathouse (the "Boathouse").[6] In late 2018, Hains submitted an application to the state for a lease to build a boathouse over False River.[7] The State notified Hains that the lease application and construction plans would need to be approved by the Parish before the State would grant the lease.[8]

On or around January 2, 2019, the Parish issued a letter of no objection to the issuance of the lease to Hains and the proposed construction.[9] On January 16, 2019, Hains executed a lease with the State of Louisiana (the "Lease") as to "approximately

---

[2] Rec. Doc 53-1, ¶ 2.
[3] *Id.*
[4] La. Rev. Stat. § 9:1110; Note that throughout the Statement of Uncontested Facts, Plaintiff repeatedly cites to "La. Rev. Stat. § 9:110", which does not exist.
[5] *Id.*
[6] Rec. Doc. 53-1, ¶¶ 3-5.
[7] *Id.* at ¶ 6.
[8] *Id.* at ¶ 7.
[9] Rec. Doc. 53-2, p. 150.

1,800 square feet of state claimed water bottoms in False River."[10] The Lease states that it was executed "for the sole purpose of maintaining a deck with two boat slips and an upper floor with an entertainment room."[11] In reliance on the Lease, Hains retained a contractor and spent approximately $500,000.00 to construct the Boathouse pursuant to the plans and specifications incorporated into the Lease.[12]

After construction commenced on the Boathouse, Hains' neighbor, Stephen Panepinto ("Panepinto"), made it known on multiple occasions that he was upset with the construction of Hains' Boathouse.[13] In May of 2019, Panepinto contacted the State Land Office and demanded that that an inspection of the Boathouse be done to make sure it was being built in accordance with the approved plans.[14] The State Land Office confirmed the Boathouse was compliant.[15] After the construction of the Boathouse was completed, the complaints from Panepinto did not cease. On July 16, 2019, Panepinto sent a legal demand to Hains regarding other structures on Hains' property that existed at the time Hains purchased the property.[16] This demand resulted in Panepinto suing Hains.[17] On June 21, 2022, the state court dismissed Panepinto's lawsuit against Hains.[18]

On July 9, 2019, members of the Parish Council proposed an amendment to the portion of the Parish's ordinances governing False River to prohibit the construction of boathouses and other structures similar to Hains' Boathouse.[19] Parish President Major

---

[10] Rec. Doc. 53-1, p. 5.
[11] *Id.*
[12] *Id.* at ¶¶ 8-9, pp. 9-11.
[13] Rec. Doc. 53-1, ¶ 11.
[14] *Id.* at ¶ 12.
[15] *Id.*
[16] *Id.* at ¶ 14.
[17] *Id.* at ¶ 15.
[18] *Id.* at ¶ 16.
[19] Rec. Doc. 53-2, pp. 158, 160.

Thibault ("Major Thibault") confirmed that the Council discussed the proposed amendments "a few months prior" to the formal introduction of the ordinance at the council meeting on July 2019.[20] This places discussions of the proposed amendments around the time that Hains began construction on the Boathouse and the beginning of Panepinto's complaints. On August 13, 2019, the Parish held a public hearing related to the proposed ordinance.[21] At this hearing, Panepinto objected to the construction of a fully enclosed, two story pier with living area next to his camp because it obstructed his view.[22] The Parish Council voted in favor of the ordinance.[23] The Louisiana Department of Natural Resources ("DNR"), as required by La. Rev. Stat. § 33:1326.25, approved the ordinance on September 30, 2020.[24]

On June 26, 2022, a fire damaged a portion of the roof, the sheetrock, and other features on the interior of Hains' Boathouse and pier.[25] Hains hired the same contractor that originally built the Boathouse to quote the cost of repairing the damage.[26] Pursuant to the Lease, the repair work proposed by Hains was limited to "maintaining a deck with two boat slips and an upper floor with an entertainment room."[27] The Parish building inspector ("Parish Inspector") visited the Property shortly after the fire. During this initial visit, the only necessary permit for the repair work identified by the Parish Inspector was a demolition permit.[28] A few days after the initial visit, the Parish Inspector reversed course and informed Hains' contractor that a shoreline permit – instead of a demolition permit –

---

[20] *Id.* at pp. 96-97.
[21] *Id.* at p. 174.
[22] *Id.*
[23] *Id.*
[24] *Id.* at pp. 185-187, 192.
[25] Rec. Doc. 53-1, ¶ 17.
[26] *Id.* at ¶ 18.
[27] Rec. Doc. 53-1, p. 5.; *see* Rec. Doc. 53-3, p. 17 ¶¶ 2-12.
[28] *Id.* at ¶ 19.

would be required for the planned repairs.[29] According to the Parish, the shoreline permit was required because the repairs Hains sought exceeded $7,500, but the Parish would not issue said permit because the Boathouse did not comply with the building restrictions for structures on False River that were adopted by the Parish after Hains built the Boathouse.[30] Hains was advised that if she proceeded with any repair work on the Boathouse, the Parish would take legal action against her.[31] It is at this standstill that Hains filed this lawsuit.[32] On March 15, 2024, Hains moved for partial summary judgment.[33] Hains argues that the Parish's Ordinance, as interpreted and enforced, constitutes a violation of the Contract Clause and the Takings Clause in the United States Constitution.

## II. ISSUES WITH PLAINTIFF'S STATEMENT OF UNDISPUTED FACTS

As stated above, even where an opposing party fails to file an opposition to a motion for summary judgment, the Court must still satisfy itself that the facts and legal arguments are properly supported such that they entitle the movant to summary judgment. The Court notes the following issues with Plaintiff's Statement of Undisputed Facts:

- Hains claims that "[t]he State specifically informed th[e] Parish that 'Legally, we (the State Land Office) are not allowed to issue a [water bottom] lease without a [letter of] no objection from the parish governing authority.'"[34] Hains cites to "Exhibit C.8." which does not exist. Plaintiff is referring to Exhibit B.8.[35] Although the quoted portion in Hains' statement is not the exact quote, it supports the proffered fact. The Court will accept this fact as admitted.

---

[29] *Id.* at ¶ 20.
[30] *Id.*
[31] *Id.* at ¶ 21.
[32] Rec. Doc. 1.
[33] Rec. Doc. 52-1.
[34] *Id.* at ¶ 10.
[35] Rec. Doc. 53-2, p. 149.

- Hains states that "On January 2, 2020, the Parish issued a letter of no objection to the issuance of the lease."[36] The citation for this statement is deposition testimony that does not address a letter of no objection. The letter of no objection issued by the Parish is found at B.8; however, it was issued on December 20, 2018, not January 2, 2020. Because the Court located this document, the Court will accept this fact as admitted subject to the date change.

- Hains claims that documents show the Parish questioned whether it should object to the lease and proposed construction based on the "potential for obstruction of [her] neighbors view" of False River.[37] Plaintiff cites deposition testimony, not documents; the quoted portion is not in the deposition pages cited.

- Hains lists the three proposed amendment[s] regarding the ordinance on boathouse constructions, but the document cited does not directly match her description of the proposed amendments.[38]

- Hains claims that "[t]he Parish admits that the construction of Hains' boathouse was a 'catalyst' for the Parish's decision to adopt the above-described amendment to the Ordinance."[39] There is no source for this purported admission.

- Hains claims that the Parish held a public hearing related to the proposed Ordinance and that Panepinto was the only individual who testified at the hearing in support of the proposal.[40] The cited support does not mention Panepinto at all.

- Hains claims that "[t]he only rationale for the 2019 amendments to the ordinance identified in Parish records . . . is the view obstruction issue that Panepinto raised during the hearing he attended."[41] This claim (which may be more argumentative than factual) is not supported by any source.

- Hains claims that the Parish President testified that the only reason for the restrictions on height and enclosed spaces was the obstruction of the view of neighboring properties.[42] There is no source provided for this statement.

---

[36] Rec. Doc. 52-1, ¶ 11.
[37] *Id.* at ¶ 12.
[38] *Id.* at ¶ 19.
[39] *Id.* at ¶ 21.
[40] *Id.* at ¶ 22.
[41] *Id.* at ¶ 24.
[42] *Id.* at ¶ 25.

All other facts offered by Plaintiff are supported by record evidence, uncontroverted, and deemed admitted.

## III. LAW AND ANALYSIS

### A. Motion for Summary Judgment

In reviewing a party's motion for summary judgment, the Court will grant the motion if (1) there is no genuine issue of material fact, and (2) the mover is entitled to judgment as a matter of law.[43] This determination is made "in the light most favorable to the opposing party."[44] A party moving for summary judgment "'must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case.'"[45] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[46] However, the non-moving party's burden "'is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"[47]

Notably, "[a] genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[48] All reasonable factual

---

[43] FED. R. CIV. P. 56(a).
[44] *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); 6 V. MOORE, FEDERAL PRACTICE 56.15(3) (2d ed. 1966)).
[45] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986).
[46] *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[47] *Willis v. Roche Biomedical Lab., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[48] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

inferences are drawn in favor of the nonmoving party.[49] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[50] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiffs [can]not rest on his allegations . . . to get to a jury without any "significant probative evidence tending to support the complaint."'"[51] Likewise, the "fundamental rules governing summary judgment"[52] prohibit the Court from weighing evidence or making credibility determinations. "By choosing which testimony to credit and which to discard, '[a] court improperly 'weigh[s] the evidence.'"[53]

### B. Contract Clause

Hains contends the Contract Clause of the U.S. Constitution applies to the Boathouse lease. The Contract Clause states "No State shall . . . pass any . . . law impairing the obligation of contracts[.]"[54] Hains argues the Parish Council is included under the "state" regarding the Contract Clause. To support this argument Hains cites *Rousselle v. Plaquemines Parish School Bd.*,[55] wherein the Supreme Court of Louisiana held:

> [A] School Board is an agency of the state and is aware of the legislature's broad and pervasive power to regulate public education. Accordingly, it is not protected by the constitutional prohibition against the legislature enacting laws which impair the obligation of contracts. The inhibitions found

---

[49] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[50] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)(emphasis added)(citation omitted).
[51] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).
[52] *Burton v. Freescale Semiconductor, Inc.,* 798 F.3d 222, 236 (5th Cir. 2015).
[53] *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 245 (5th Cir. 2016)(quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)).
[54] U.S. Const. art. I § 10, cl. 1.
[55] 633 So. 2d 1235 (La. 1994).

in Article I, § 23 of the Constitution are protections for the *citizens* and not for the *State*. This state may constitutionally pass retrospective laws waiving or impairing its own rights or those of its subdivisions, or imposing upon itself or its subdivisions new liabilities with respect to transactions already passed, as long as private rights are not infringed.[56]

While *Rousselle* deals with a school board rather than a Parish Council, the Court is persuaded a Parish Council would fall under the "subdivisions" noted by the court. Thus, the Parish Council/Point Coupee Parish Government are not afforded the constitutional protections given to the legislature. As such, the Point Coupee Parish Government is a proper defendant.

1. <u>Ordinances Passed by the Parish Council are Subject to the Contract Clause of the U.S. Constitution.</u>

The Court must next consider whether an ordinance passed by the Parish Council is subject to the Contract Clause. In *John P. King Mfg. Co. v. City Council of Agusta*,[57] the Supreme Court of the United States considered whether a City of Augusta ordinance, that fixed rates for waterpower supplied from a canal owned and maintained by the city, was subject to the Contract Clause. The High Court held: "We accordingly hold that the ordinance in question is a statute of the state within the meaning of the jurisdictional provision."[58] This holding is further supported by the Supreme Court's decision in *Atlantic Coast Line R. Co. v. City of Goldsboro*, wherein the Court held: "A municipal by-law or ordinance, enacted by virtue of power for that purpose delegated by the legislature of the state, is a state law within the meaning of the Federal Constitution."[59] The district court for the Eastern District of Louisiana stated in *Davis v. Orleans Par. Sch. Bd.* that "[a]

---

[56] *Id.* at pp. 1246-1247 (Citations omitted).
[57] *John P. King Mfg. Co. v. City Council of Augusta*, 277 U.S. 100, 101 (1928).
[58] *Id.* at 114.
[59] *Atlantic Coast Line R. Co. v. City of Goldsboro,* 232 U.S. 548, 555 (1914).

constitutional challenge arises under the Contract Clause in situations when a statute or ordinance is enacted subsequent to the formation of a contract and, as a result of the legislation, the contract is allegedly impaired."[60] The ordinance in question fits squarely under the facts in *Davis*. Thus, Plaintiff has established that the ordinance is subject to the Contract Clause.

> 2. <u>The Amended Ordinance Governing Boathouses Impermissibly Impairs Hains' Rights and Obligations Under the Lease and Does Not Further a Significant or Legitimate Public Purpose</u>

Hains asserts that, to determine whether the Contract Clause has been violated, the court must use a four-step test laid out by the Louisiana Supreme Court.[61] While similar in certain aspects, this four-step test is the incorrect test to apply. Rather, the three-step test laid out by the Fifth Circuit in *United Healthcare Ins. Co. v. Davis*[62] is applicable. Hains does acknowledge *Davis* but utilizes the state test. This Court will apply *Davis*, which instructs:

> To determine whether a state law has impaired its own contractual obligations for the purposes of the Clause, we apply the Supreme Court's three-step analysis. *First*, we must determine whether the law substantially impaired a contractual relationship with the state. *Second*, if so, we examine the state's asserted justification for the impairment, which must be a significant and legitimate public purpose. *Third*, if the public purpose is adequate, we ask whether the challenged law was reasonably necessary to achieve the purpose.[63]

Furthermore, "[i]f a law impairs a state's own contracts such impairment faces more stringent examination under the Contract Clause than would laws regulating contractual

---

[60] *Davis v. Orleans Par. Sch. Bd.*, No. CIV.A. 04-3511, 2005 WL 2037369, at *6 (E.D. La. Aug. 18, 2005) (citing *City of Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 181 (1905)).
[61] Rec. Doc. 52-2, pp. 21-22.
[62] 602 F.3d 618, 627 (5th Cir. 2010) (citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)).
[63] *Id.* (citations omitted)(emphasis added).

relationships between private parties."[64] It is under these standards that the facts of the immediate case will be analyzed.

### a. The Amended Ordinance Impaired Hains' Rights

Hains argues that substantial impairment and a "constitutional dimension" have been established. While establishing a substantial impairment is necessary under Fifth Circuit jurisprudence, establishing a constitutional dimension appears unnecessary under the Fifth Circuit test. Further, there appears to be a constitutional dimension inherent within the challenge.

To determine whether a law substantially impairs a contractual relationship with the state, Hains cites to *Advocates for Arts-Based Educ. Corp.,* where the court found that "the court should . . . consider which terms of the contract are affected by the law, and the duration of the effects."[65] Additionally, the "[c]omplete destruction of contractual expectations is not required for finding substantial impairment."[66] Hains' contractual purpose under the Lease is to "maintain[] a deck with two boat slips and an upper floor with an entertainment room."[67] Since the damage to the Boathouse was sustained, Hains has been unable to fulfill her leasehold obligation to maintain the Boathouse. This impairment will continue indefinitely. There is simply no way Hains can comply with both the terms of the Lease and the Parish ordinance. Hence, the first element of the Fifth Circuit test is established; the Parish ordinance has substantially impaired Hains' contractual relationship with the State of Louisiana.

---

[64] *Advocates for Arts-Based Educ. Corp. v. Orleans Parish School Bd.*, No. CIV.A. 09-6607, 2010 WL 375223, at *3 (E.D. La. Jan. 26, 2010) (citing *Allied Structural Steel Co.,* 438 U.S. at 244 n. 15)).
[65] *Id.* at *4 (citing *Lipscomb v. Columbus Mun. Separate School Dist.,* 269 F.3d 494, 504 (5th Cir. 2001)).
[66] *Id.* at *4 (citing *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.,* 459 U.S. 400, 411 (1983)).
[67] Rec. Doc. 53-1, p. 5.

### b. No Legitimate Public Purpose for the Ordinance

To justify the impairment, the Parish must identify a significant and important public purpose. Although it did not respond to Hains' Motion, in past briefing, the Parish previously identified two purposes for the ordinance:[68] (1) the obstruction of view that boathouses and similar structures may cause for other property owners;[69] and (2) environmental concerns regarding water quality.[70]

Regarding the Parish's first offered purpose, the *Davis* court stated that "[p]roviding a benefit to a narrow group or special interest is insufficient justification."[71] The only individual identified with a complaint about obstruction of view was Hains' neighbor, Panepinto, who testified at the public hearing about the ordinance.[72] The Parish has not responded to raise a genuine dispute of fact as to whether others are affected by an obstruction; accordingly, on the record before it, the Court finds that this issue affects only an individual or narrow special interest that would justify the new ordinance.

While the second purpose of environmental concerns leans more favorably toward the Parish, there is no evidence to establish that the ordinance furthers a "significant and important public purpose." In his deposition, Major Thibault argued that the ordinance addresses environmental concerns regarding water quality.[73] In *U.S. Trust Co. of New York v. New Jersey*, the Supreme Court found that "[m]ass transportation, energy conservation, and environmental protection are goals that are important and of legitimate

---

[68] The Court notes that it is not obligated to craft an ostensible opposition to the pending motion from past pleadings; however, to provide context for the issues in the case and the Court's ruling, it has made this reference.
[69] Rec. Doc. 53-2, pp. 26-27.
[70] *Id.* at pp. 33-34.
[71] *Davis*, 602 F.3d at 631.
[72] Rec. Doc. 53-2, p. 174.
[73] *Id.* at pp. 26-27, 32-33.

public concern."[74] While environmental issues may be a legitimate public concern, the Parish cannot use this reason as justification because it was arguably aware of the issues long before the enaction of the challenged ordinance.[75] Major Thibault testified that the Parish has spent "a lot of time and effort . . . over the last thirty (30) or forty (40) years to improve water quality."[76]

In *U.S. Trust*, a statutory covenant made by parallel statutes by the States of New York and New Jersey limited the ability of the Port Authority to subsidize rail passenger transportation from revenues and reserves.[77] The covenant was retroactively repealed in order to increase Port Authority participation in mass transit.[78] The Supreme Court found that the state's argument regarding the importance of mass transit was known at the time of the adoption of the covenant, and a rise in general concern regarding environmental protection was a change in degree and not of kind.[79] As such, the repeal was unreasonable.[80] The *U.S. Trust* decision made clear that the revocation of a restriction was unconstitutional when the environmental concern was known at the time of the restriction's (or covenant's) adoption. Here, the Parish's points to water quality issues that the Parish has known about and purportedly worked to address for decades.

Even if this environmental concern regarding water quality rose to a significant and legitimate public purpose, the Parish would still have the burden to demonstrate that the challenged ordinance was reasonably necessary to achieve this purpose. The Parish has failed to accomplish this by failing to submit any summary judgment evidence on this

---

[74] 431 U.S. 1, 28 (1977).
[75] *Id.* at 32.
[76] Rec. Doc. 53-2, p. 34.
[77] *U.S. Trust Co. of New York,* 431 U.S. at 4.
[78] *Id.* at 12-13.
[79] *Id.* at 31-32.
[80] *Id.*

point. Specifically, Major Thibault testified that other designs for AC systems exist that would achieve the same environmental protection without the complete banning of construction of structures like the Boathouse, which undermines the position that the ordinance was reasonably necessary to achieve the environmental goals.[81]

The Court finds that neither justification from the Parish satisfies the second or third factors of the Fifth Circuit test. Even if the environmental concerns did rise to a significant, legitimate public purpose, the Parish has made no showing that the challenged ordinance is reasonably necessary to achieve this purpose.

Accordingly, the Court finds that Plaintiff has presented uncontroverted summary judgment evidence establishing that she is entitled to summary judgment on the Contract Clause claim.

### C. The Takings Clause

Hains also argues that the Parish's ordinance results in a regulatory taking under the Takings Clause of the U.S. Constitution.[82] The Takings Clause of the Fifth Amendment prohibits the government from taking private property for public use without just compensation.[83] While Hains is correct that, "[u]ltimately, whether a regulatory taking has occurred will depend largely on the particular circumstances of each case,"[84] Hains fails to provide any supporting precedent to demonstrate she is entitled to summary judgment on this claim. The decision in *Vulcan Materials Co. v. City of Tehuacana*[85] may provide guidance, but it is distinguishable from this case. In *Vulcan*, a limestone quarry operator

---

[81] Rec. Doc. 53-2, pp. 36-37.
[82] *Id.*, at p 37.
[83] U.S. Const. Amend. V.
[84] Rec. Doc. 52-2, p. 26 (citing *Lewis v. United States,* No. CV 17-1644-JWD-RLB, 2019 WL 4738791, at *10 (M.D. La. Sept 27, 2019)).
[85] 369 F.3d 882 (5th Cir. 2004).

sued the City of Tehuacana, asserting that the City's ordinance forbidding quarrying or mining activities within the city limits rendered Vulcan's relevant leasehold interest valueless.[86] As such, the Ordinance constituted a categorical taking.[87] But, the Fifth Circuit decided this issue under the Texas Constitution rather than the Federal Constitution. Thus, *Vulcan* is not a "one-to-one" comparison. Additionally, Hains has failed to analyze the facts under the *Penn Central* test.[88] This balancing test weighs "factors such as the economic impact of the regulation, its interferences with reasonable investment-backed expectations, and the character of the government action."[89] While Hains may ultimately have a valid claim under the Takings Clause, there is insufficient evidence or legal analysis to support summary judgment in her favor on this claim.

## IV.   CONCLUSION

For the reasons set forth above, and because the Parish entirely failed to oppose this motion or present any countervailing summary judgment evidence, Plaintiff's *Motion for Partial Summary Judgment*[90] is GRANTED in PART and DENIED in PART. Summary judgment is entered in favor of Plaintiff on the Contract Clause claim; the motion is denied as to her Takings Clause claim.

Baton Rouge, Louisiana, this  4th  day of September, 2024.

_____
**SHELLY D. DICK
CHIEF DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA**

---

[86] *Id.* at 892.
[87] *Id.* at 891.
[88] *Penn Central Transp. Co. v. N.Y.C.*, 438 U.S. 104, 124 (1978).
[89] *Golden Glow Tanning Salon, Inc. v. City of Columbus, Mississippi*, 52 F.4th 974, 980 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 1085, 215 L. Ed. 2d 397 (2023) (citing *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 140 (2021)).
[90] Rec. Doc. 52.